J. Bryan Quesenberry
2750 SW Coast Ave.
Lincoln City, OR 97367
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**FEB 20 2025**

JEFFREY P. COLWELL
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. J. BRYAN QUESENBERRY,<br><br>Plaintiff/Relator,<br>vs.<br><br>MOFFAT CONSOLIDATED SCHOOL DISTRICT #2 a/k/a COUNTY OF SAGUACHE, MOFFAT CONSOLIDATED SCHOOL DIST 2,<br><br>Defendant. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal)**<br>**(DO NOT PLACE ON PACER)**<br><br>JURY TRIAL DEMANDED<br><br>Civil Action No. _____ |

Plaintiff-Relator J. Bryan Quesenberry, a licensed attorney acting *pro se* on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against Defendant, alleges, based upon personal knowledge, relevant documents, information, and belief, as follows.

### INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendant and/or its agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (**"FCA"**).

2.   This action seeks to recover almost half a million dollars wrongfully loaned to Defendant through the Federal Government's Payroll Protection Program (**"PPP"**). The PPP provided a pathway to borrowers to receive forgiveness of these loans.

3.   Defendant is a government-owned and -controlled entity, as detailed below.

4.   As such, Defendant was not entitled to PPP funds. *See*, 13 CFR 120.110(j) ("government-owned entities" are ineligible to receive SBA loans).

5.   Rather, as a government-owned and -controlled entity, Defendant was eligible for and received Covid relief funds through Coronavirus Aid Relief and Economic Security (CARES) Act programs other than the PPP, including, for example, the Elementary and Secondary School Emergency Relief (ESSER) Fund.

6.   Nevertheless, Defendant represented in its PPP application that it was eligible for a PPP loan.

7.   Because Defendant obtained (and was forgiven of) almost $500,000 in PPP funds, despite being ineligible, other eligible potential borrowers were denied the opportunity to borrow and use that PPP money.

## HISTORY OF THE FALSE CLAIMS ACT

8.   Pursuant to the PPP, the Federal Government spent hundreds of billions of dollars in stimulus funding, as well as other federal funding, to support and aid small businesses through the coronavirus pandemic.

9.   The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization.

The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

10.  The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Anyone who violates the FCA is liable for a civil penalty for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

11.  In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest..." 31 U.S.C. § 3729(b)(2).

12.  The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendant during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

13.  Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendant's misconduct has extended.

## PARTIES

14. Plaintiff/Relator J. Bryan Quesenberry ("**Relator**") is a resident of Oregon. He is an attorney licensed to practice law in Utah and brings this action on behalf of the United States of America, the real party in interest.

15. Defendant Moffat Consolidated School District #2, referenced in PPP records as "County of Saguache, Moffat Consolidated School Dist 2," (**"School District"**) is a government entity in Saguache County, Colorado.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, upon information and belief there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

17. Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Relator researched and discovered the pertinent entity information and individual information of Defendant.

18. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendant is a government entity located in the District of Colorado.

19. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendant is a government entity located in the District of

4

Colorado, and because violations of 31 U.S.C. §§ 3729 *et seq.* alleged herein occurred within this district.

## THE PAYCHECK PROTECTION PROGRAM

20.     Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (**"CARES Act"**). Section 1102 contained a new program called the Paycheck Protection Program (**"PPP"**) and was part of the U.S. Small Business Administration's (**"SBA"**) 7(a) Loan Program. These two sections were intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by then-President Trump on March 13, 2020.

21.     Due to the COVID-19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus.

22.     The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

23.     Section 1102 of the Act temporarily permitted SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

24.     The CARES Act was intended to provide relief to America's small businesses expeditiously.

25.     The CARES Act gave lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified

5

documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders were held harmless for borrowers' failures to comply with PPP rules.

26. Defendant submitted documentation attempting to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, and income and expenses documentation.

27. On the PPP application, a representative of Defendant had to certify in good faith to a number of representations to the Federal Government. The second bullet point under the CERTIFICATIONS AND AUTHORIZATIONS section on the PPP loan application states:

> ***The Applicant is eligible to receive a loan*** under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule). [Emphasis added].

28. Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

29. Defendant also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

30. Finally, Defendant certified that they "underst[ood] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## ALLEGATIONS

### Government-Owned Entities Are Not Eligible to Receive PPP Loans

31. Title I, Section 1102(a)(i)(D)(i) of the CARES Act indicates that borrowers must comply with certain eligibility requirements.

32. One such eligibility requirement is found in the Code of Federal Regulations that states "government-owned entities" are ineligible to receive SBA loans, which would include PPP loans. *See*, 13 CFR 120.110(j).

33. The ineligibility of government-owned entities is important with PPP loans because the first question on the PPP loan application asks whether the applicant is "declared ineligible" from participation in this transaction by any Federal department or agency. The applicant had to have answered this question in the affirmative in order to obtain a PPP loan.

### Characteristics of Government-Owned Entities

34. The Federal Deposit Insurance Corporation (FDIC) issued General Guidance on Practices for Marketing to a Government-Owned Entity (GOE) in which the FDIC described a GOE as including "traditional government agencies, departments, and public enterprises" as well as "government-owned and government-controlled entities." *See*, General Guidance, p. 8, https://www.fdic.gov/about/diversity/sbrp/410.pdf. Factors considered by the FDIC to determine if an entity is a GOE include:

    a. Whether the entity's employees public officers or civil servants.

    b. Whether control over the entity is exercised by a government entity.

    c. Whether the entity's activities are financed by a government entity. *Id.* at p. 9.

35. According to the FDIC, "If the answer to one or more of these questions is yes, it is likely that the client should be treated as a GOE." *Id.*

36. Complementing the FDIC's descriptions of a GOE is a website that characterizes GOEs as:

   a. An entity formed by the government for the purpose of engaging in commercial activities;

   b. Fully or partially owned by the government;

37. Representing the government in commercial endeavors.[1]

## The School District Is a Government-Owned Entity

38. The following information establishes that Defendant is a government-owned entity and should not have applied for and received a PPP loan.

39. The School District designated itself on its PPP loan application as being in the industry of "Elementary and Secondary Schools."

40. The official website of the Colorado Department of Education identifies the School District as one of the state's public school districts.[2]

41. The School District's financial statements for the fiscal year ended June 30, 2020, note that it "was reorganized by a vote of qualified electorate in 1961, under the provisions of the Colorado School Organization Act of 1957."[3]

42. The School District operates under an elected five-member Board of Education.

43. The School District's official financial statements for the fiscal year ended June 30, 2020, further state that the School District "is the lowest level of government, which is considered to be financially accountable over all activities related to public school education" in its jurisdiction and that it "receives funding from local, state, and federal government sources and

---

[1] https://www.investopedia.com/terms/s/soe.asp#:~:text=A%20state-owned%20enterprise
[2] https://www.cde.state.co.us/schoolview/explore/profile/2800
[3] See, School District's June 30, 2022 financial statements, pg. 110, which can be found here: https://resources.finalsite.net/images/v1705482214/moffatschoolsorg/htdwqwpqfxeeyop8hnmf/audit_report_2019-2020.pdf

must comply with the requirements of these funding source entities." See, School District's June 30, 2022 financial statements, pg. 10.

44. The financial statements note that the School District's programs and services are "Governmental Activities" and that "[a]s of June 30, 2020, the District did not have any Business-Type Activities." *Id.* at pg. 12.

45. The School District appears to be the only one of 179 public school districts in Colorado that applied for and obtained a PPP loan.

46. Despite being a government-owned entity, the School District applied and was approved for a PPP loan on April 27, 2020, in the amount of $462,500. This loan was forgiven on July 1, 2021, in the amount of $467,809.

47. Relator is aware of a similar government-owned entity that is a school district in the Middle District of Georgia that was sued as ineligible for a PPP loan. That school district settled the PPP lawsuit and repaid the PPP loan after a state audit underlined its ineligibility for the loan. Relator will provide the settlement agreement and other related information in its Disclosure Statement.

## CAUSES OF ACTION

### COUNT 1

**Violations of the FCA, 31 U.S.C. § 3729(a)(1)(A)
Submitting a False Claim for Approval**

48. The above paragraphs are realleged and incorporated herein.

49. The FCA imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

9

50. Defendant knowingly presented or caused to be presented to the SBA a claim for approval of a PPP loan application for which it was ineligible because Defendant is a government-owned entity.

51. Defendant knowingly submitted false certifications on the PPP loan applications at issue herein that were material to the government's decision to approve and then forgive Defendant's PPP loans. When submitting the PPP loan applications, Defendant had to certify it was compliant with SBA's guidance and rules, that it was eligible for the loans, and that all information included on its application forms was true and accurate in all material respects.

52. But for Defendant's submission of its false claims, Defendant would not have received the loans.

53. By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

54. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq*. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation arising from Defendant's unlawful conduct alleged herein.

## COUNT 2

### Violations of the FCA, 31 U.S.C. § 3729(a)(1)(B)
### Creating a False Record or Statement Material to a False Claim

55. The above paragraphs are realleged and incorporated herein.

56. The FCA imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim paid or approved by the U.S. government. 31 U.S.C. § 3729(a)(1)(B).

57. Defendant knowingly made or caused to be made false records or statements to support a false claim submitted to the SBA for a PPP loan.

58. The false records and statements Defendant made were used to support false claims submitted to the U.S. government.

59. By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

60. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq*. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation arising from Defendant's unlawful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendant as follows:

1. That this Court enter judgment against Defendant in an amount equal to three times the damages the United Sates has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

3. That Relator be awarded all costs of this action, including attorney's fees and expenses; and

4. That Relator recover such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: February 14, 2025.

Respectfully submitted,

/s/ Bryan Quesenberry
J. Bryan Quesenberry
Plaintiff/Relator

```
U.S. POSTAGE PAID
FCM LG ENV
LINCOLN CITY, OR 97367
FEB 14, 2025
$2.31
S2324N501020-88
```

Retail
RDC 99
80294

B. Quesenberry
2750 SW Coast Ave.
Lincoln City, OR 97367

U.S. District Court
District of Colorado
901 19th Street
Denver, CO 80294

